[No. 13725.  Department Two.  April 30, 1917.]

F. C. MOSER, *Appellant*, v. ALEXANDER PANTAGES *et al.*,

*Respondents.*[1]

INSURANCE—REBATES—VALIDITY—STATUTES.  Where a life insurance solicitor agreed that his commissions for procuring life insurance should be his compensation for procuring for the assured a real estate mortgage loan from the insurance company, he induced the insurance by a rebate of the premium to the extent of his commissions, in violation of Rem. Code, § 6059-180, which provides that no insurance agent shall pay, as inducement to insurance, any rebate of premium payable on the policy or any special favor, or other valuable consideration or inducement whatsoever not specified in the policy.

SAME—CONTRACT FOR REBATES—VALIDITY.  A life insurance solicitor's contract calling for a rebate in violation of Rem. Code, § 6059-180, is void, notwithstanding the statute does not declare such contracts void; in view of the fact that it clearly prohibits such contracts, and of § 6059-191, providing that any insurance agent willfully violating any of the provisions of the article shall be fined and have his license revoked.

Appeal from a judgment of the superior court for King county, Jurey, J., entered August 1, 1916, upon sustaining a demurrer to the complaint, dismissing an action for damages.  Affirmed.

*Kerr & McCord*, for appellant.

*Ryan & Desmond*, for respondents.

MOUNT, J.—The plaintiff brought this action to recover damages because the defendants failed to pay the premiums upon two life insurance policies.  The trial court sustained a general demurrer to the amended complaint.  The plaintiff refused to plead further, and an order was entered dismissing the action.  The plaintiff has appealed.

The amended complaint, after alleging that the defend-

[1] Reported in 164 Pac. 768.

ants are the owners of two lots in the city of Seattle, is as follows:

"(2) That on or about April 1st, 1914, the said defendants orally employed the plaintiffs to negotiate for them a first mortgage loan upon the within described property. That thereupon this plaintiff entered into negotiations with the New York Life Insurance Company of New York, to procure the maximum loan for said defendants upon the within described property which the said New York Life Insurance Company might authorize.

"(3) That thereupon, on May 27th, 1914, the said defendant, Alexander Pantages, made a written application through this plaintiff for a loan of $150,000, to be secured by a first mortgage upon said premises for a period of five years, with interest at the rate of 6% per annum, with repayments of $10,000 at the end of the second, third and fourth years, $100,000 to be advanced upon satisfactory title being shown, the balance after the completion of a building to be erected on said lots to cost not less than $200,000; that the New York Life Insurance Company accepted the application of said defendants for said loan and agreed to make same in accordance with the terms of said application.

"(4) That, at the time the plaintiff was employed by the defendants to procure said loan, and as compensation for his services in procuring the said loan of $150,000 for the defendants, the defendants agreed to take out Life Insurance Policies in the New York Life Insurance Company through the plaintiff, as agent for said New York Life Insurance Company, the said plaintiff being, during all of said negotiations, a solicitor of life insurance for the New York Life Insurance Company, that said plaintiff stated to said defendants that if the defendants took out policies in the said New York Life Insurance Company at the solicitation of the plaintiff, he, as a solicitor of the New York Life Insurance Company, would be entitled to a commission for procuring such insurance, and that the commission he would receive from the New York Life Insurance Company for procuring said policies would be his compensation for the procuring of said loan for the defendants upon the above described premises.

"(5) As there now existed a completed contract between the New York Life Insurance Company and the defendants,

for a loan, said plaintiff therefore demanded of the said defendants, for his services for procuring for them the said loan of $150,000 that they accept policies of life insurance in the said New York Life Insurance Company; that on the 28th day of May, 1914, said plaintiff delivered to the defendant Alexander Pantages policy of life insurance No. 4,577,322, issued by the New York Life Insurance Company for $100,000 upon the life of the said Alexander Pantages, and at the same time delivered to Alexander Pantages policy of life insurance No. 4,577,325, issued by the New York Life Insurance Company for $100,000 upon the life of the defendant Lois A. Pantages. That said policies of insurance were received and accepted by the said defendants, and that the said defendants promised and agreed to pay the premiums thereon and to maintain said life insurance policies in force, that the premiums upon said policies for the first year aggregated the sum of $10,359, which sum the defendants promised and agreed to pay, that, under plaintiff's contract of employment with the New York Life Insurance Company, he was entitled to receive out of said premium, for the year 1914, when paid, 35% thereof, or the sum of $3,625.65 upon said policies of insurance so delivered by plaintiff to the defendants and accepted by them.

"(6)  That after the plaintiff had negotiated said loan of $150,000 with the New York Life Insurance Company and after said Insurance Company had agreed to make said loan, and was able, ready and willing to complete the same, and after said policies had been issued and delivered to the defendants and accepted by them, the said defendants returned said policies to the New York Life Insurance Company and refused to pay the premiums thereon and refused to accept said loan.

"That the plaintiff completely performed the service of procuring said loan for the defendants and in procuring said policies of insurance, and did and performed all the things required of him under the terms of his employment with the defendants, that the defendants by refusing to complete said loan with the New York Life Insurance Company and refusing to retain said policies of insurance after their acceptance by them, and by refusing to pay said premiums upon said policies in accordance with their agreements with plaintiff, damaged the plaintiff in the sum of three thousand six hundred

twenty-five dollars and sixty-five cents ($3,625.65) that the plaintiff has demanded of the defendants the payment of said sum of $3,625.65, but that the defendants have not paid the sum nor any part thereof, and that the whole sum of $3,625.65 is now due and unpaid."

Then follows a prayer for judgment for that amount.

The statute (Rem. Code, § 6059-180) provides:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals, between insurants of the same class and equal expectation of life, in the amount of payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any company or agent . . . make any contract of insurance or agreement as to such contract, other than is plainly expressed in the policy issued thereon; nor shall any such company or agent, . . . pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any other valuable consideration or inducement whatsoever not specified in the policy contract of insurance."

The complaint above quoted shows that the loan contract and the insurance contract were parts of the same transaction. It shows that the appellant was an agent of the New York Life Insurance Company; that, as such agent, he was employed by the respondents to obtain a loan of $150,000 from the New York Life Insurance Company; and then, in paragraph 4, states:

"That said plaintiff stated to said defendants that if the defendants took out policies in the said New York Life Insurance Company at the solicitation of the plaintiff, he as a solicitor of the New York Life Insurance Company would be entitled to a commission for procuring such insurance and that the commission he would receive from the New York Life Insurance Company for procuring said policies would be his compensation for the procuring of said loan for the defendants upon the above described premises."

This is a direct allegation that the commission he would receive from the company for procuring the policies would be his compensation for procuring the loan.   In other words, he would reduce the premium by the amount of his commission, as an inducement for the respondents to enter into the contract of insurance.   In short, the appellant induced the insurance by a rebate of the premium to the extent of his commission, which he made up by a charge for procuring the loan.   This clearly is in the face of the statute which provides that no insurance agent shall pay, as an inducement to insurance, any rebate of premium payable on the policy, or any special favor, or other valuable consideration, or inducement whatsoever not specified in the policy contract of insurance.

The appellant relies upon the case of *Calvin Phillips & Co. v. Fishback,* 84 Wash. 124, 146 Pac. 181.   That case is distinguishable from this by the fact that in that case there was no rebate of commissions, either on the loan or upon the policy of insurance.   Here there is a rebate upon the premium for the policy of insurance, or a rebate of commissions for procuring the loan, either of which was unlawful because an unlawful inducement for the insurance.   We are satisfied, for that reason, that the opinion in the *Calvin Phillips* case does not control in this case.

The appellant further argues that, if the complaint discloses an agreement in violation of the section of the code above noted, even then he is not precluded from recovering, because the law does not declare such contract void.   The statute does not, in terms, declare such contracts void, but Rem. Code, § 6059-180, hereinbefore quoted, clearly prohibits such contracts, and § 6059-191 provides that any insurance agent knowingly and willfully violating any of the provisions of this article shall be fined in any sum not exceeding five hundred dollars and shall have his license revoked.

The appellant relies upon the cases of *Way v. Pacific Lumber & Timber Co.,* 74 Wash. 332, 133 Pac. 595, 49 L. R. A. (N. S.) 147, and *Ferguson-Hendrix Co. v. Fidelity & De-*

*posit Co.*, 79 Wash. 528, 140 Pac. 700. The *Way* case was a case where the appellant sought to recover the difference between the regular rate upon a policy of insurance and the reduced rate. We held in that case he could not recover, because, in substance, he could not profit by his own wrong. We said in that case, however, that a contract which violates a statutory regulation of business is not void unless made so by the terms of the statute. We were there considering a contract which the agent was seeking to avoid for his own benefit. In the *Ferguson-Hendrix* case, we held to the same effect. In the latter case, quoting from *Miller v. Ammon,* 145 U. S. 421, we said:

" 'The general rule of law is, that a contract made in violation of the statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover.'

"We announced the same principle in the recent case of *Stirtan v. Blethen,* 79 Wash. 10 [139 Pac. 618, 51 L. R. A. (N. S.) 623]."

The contract made here was in violation of the terms of the statute, and this action is an attempt on the part of the appellant to enforce, in his favor, an illegal contract which he made with the respondents. This he may not do.

We are satisfied that the trial court properly sustained the demurrer, and the judgment is therefore affirmed.

ELLIS, C. J., FULLERTON, PARKER, and HOLCOMB, JJ., concur.