[No. 8252–3–I.   Division One.   April 13, 1981.]

WILLIAM WINELAND, ET AL, *Respondents*, v. MARKETEX INTERNATIONAL, INC., ET AL, *Petitioners*.

GILBERT C. LONG, ET AL, *Petitioners*, v. MARKETEX INTERNATIONAL, INC., ET AL, *Respondents*.

*Schweppe, Doolittle, Krug, Tausend & Beezer, Dexter A. Washburn,* and *Margaret L. Barbier,* for Marketex International, et al.

*Charles J. Coolidge,* for Wineland and Long.

*Kenneth O. Eikenberry, Attorney General, Thomas L. Boeder, Deputy,* and *Jon Ferguson, Assistant,* amici curiae.

DURHAM, J.—This case presents one issue: is a claim under the Consumer Protection Act, RCW 19.86, referable to arbitration under a broad arbitration clause contained in a written agreement? Here, the agreement was an interstate contract for the sale of candy dispensing machines.

The plaintiffs, Wineland and Long, Washington residents, each signed identical "Independent Sales Agreements" (Agreement) with the defendant Marketex International, Inc. (Marketex), a Nevada corporation with principal place of business in Santa Clara County, California. Each agreement provided for the purchase of candy dispensing machines by plaintiffs and the sale and shipment of the machines by Marketex from California to Seattle. The Agreement contained the following arbitration provision:

20. In the event that any controversy or claim arising out of this Agreement cannot be settled by the parties or their legal representatives, said claim or controversy shall be settled by reason of binding arbitration, as the sole remedy therefore, in accordance with the then current rules of, and by, an arbitrator, selected under the auspices of the American Arbitration Association, County of Santa Clara, and the findings therein, as well as any award thereunder, shall be confirmed as a Judgment, upon application, to any court having jurisdiction thereof.

Approximately 6 months after signing the Agreements, Wineland and Long brought separate suits against Marketex for rescission and damages. The complaints each pleaded two causes of action; the first alleged common law fraud, and the second alleged unfair and deceptive acts and practices in the conduct of trade and commerce in violation of RCW 19.86.010 *et seq.*

Marketex moved to dismiss or stay all proceedings in each suit pending arbitration pursuant to the arbitration clause. The motions were heard separately before different judges of the superior court. The motion in the Wineland action was granted as to the common law fraud claim, but denied as to the Consumer Protection Act claim. Marketex

seeks discretionary review of the court's order denying arbitration of Wineland's Consumer Protection Act claim. In the Long action, the Superior Court stayed the entire action pending arbitration. Long seeks discretionary review of the court's order which submits his Consumer Protection Act claim to arbitration. The two cases were consolidated for review.

■ The parties agree that the federal arbitration act, 9 U.S.C. §§ 1–14 (1970), applies. That statute operates on any contract "evidencing a transaction involving commerce", 9 U.S.C. § 2 (1970), "commerce" meaning "commerce among the several States". 9 U.S.C. § 1 (1970). Washington courts have held such contracts subject to the act. *Allison v. Medicab Int'l, Inc.,* 92 Wn.2d 199, 597 P.2d 380 (1979); *Pinkis v. Network Cinema Corp.,* 9 Wn. App. 337, 512 P.2d 751 (1973). The act provides that if a suit is brought in any court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court shall stay the trial pending arbitration. 9 U.S.C. § 3 (1970).

Plaintiffs contend that claims based on the Consumer Protection Act are not "referable to arbitration" because federal case law has carved an exception to the arbitration act, namely, that claims based on antitrust laws are not arbitrable. The leading case relied upon by plaintiffs is *American Safety Equip. Corp. v. J.P. Maguire & Co.,* 391 F.2d 821, 3 A.L.R. Fed. 901 (2d Cir. 1968). There, a licensee's declaratory judgment suit alleged illegality of a license agreement and violation of the Sherman Anti–Trust Act. The licensor's assignee invoked the agreement's arbitration clause, but the court held the antitrust claim inappropriate for arbitration. The primary consideration was that an antitrust violation was not just a private matter, but that it affected the public interest. Such important public issues should remain in the courts. The court also noted that

> the issues in antitrust cases are prone to be complicated, and the evidence extensive and diverse, far better suited to judicial than to arbitration procedures. Moreover, it is

the business community generally that is regulated by the antitrust laws. Since commercial arbitrators are frequently men drawn for their business expertise, it hardly seems proper for them to determine these issues of great public interest.

*American Safety Equipment,* at 827.

*American Safety Equipment* was followed by *A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710 (9th Cir. 1968), which held that the validity of a contract under the federal antitrust laws is not an arbitrable issue. The public interest was so strong in that situation that the court said that "[s]uch issues the parties cannot, by stipulation or otherwise, exclude from the area of judicial scrutiny and determination." *A. & E. Plastik Pak,* at 716. More recently, other federal courts have held that federal antitrust claims are not arbitrable. *Lee v. Ply\*Gem Indus., Inc.,* 593 F.2d 1266 (D.C. Cir.), *cert. denied,* 441 U.S. 967, 60 L. Ed. 2d 1073, 99 S. Ct. 2417 (1979); *Applied Digital Technology, Inc. v. Continental Cas. Co.,* 576 F.2d 116 (7th Cir. 1978); *Power Replacements, Inc. v. Air Preheater Co.,* 426 F.2d 980 (9th Cir. 1970).

The principles of these federal cases have also been used to find state antitrust laws not subject to arbitration. *Aimcee Wholesale Corp. v. Tomar Prods., Inc.,* 21 N.Y.2d 621, 237 N.E.2d 223, 289 N.Y.S.2d 968 (1968); *United Nuclear Corp. v. General Atomic Co.,* 93 N.M. 105, 597 P.2d 290, *cert. denied,* 444 U.S. 911, 62 L. Ed. 2d 145, 100 S. Ct. 222 (1979). The New York Court of Appeals has stated that arbitration agreements are unenforceable where substantial rights, embodied in statutes, express a strong public policy which must be judicially enforced. *Wertheim & Co. v. Halpert,* 48 N.Y.2d 681, 397 N.E.2d 386, 421 N.Y.S.2d 876 (1979).

That the Consumer Protection Act is a state antitrust law is clear from the statute itself:

The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, decep-

tive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters . . .

RCW 19.86.920. The Ninth Circuit has noted that RCW 19.86 is "essentially a state antitrust act, . . ." *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 644 (9th Cir. 1969). Marketex contends that the antitrust exception does not apply because plaintiffs' claim is based on a consumer law, citing *Flower World of America, Inc. v. Wenzel*, 122 Ariz. 319, 594 P.2d 1015 (Ct. App. 1978). There the court allowed arbitration of a claim based on violations of the Arizona consumer fraud act, Ariz. Rev. Stat. §§ 44–1521–1534. Although similar in purpose, it does not appear, however, that the Arizona law was patterned directly after the federal statute, as was our Consumer Protection Act. More importantly, the Arizona court found that the dispute in *Flower World* was a private matter and did not involve the public interest factors discussed in *American Safety Equip. Corp. v. J.P. Maguire Co., supra.* We find that the Consumer Protection Act is a state antitrust law and the reasoning of *American Safety Equipment* applies to the arbitrability of plaintiffs' claims under that statute. The public interest factors alone compel the conclusion that these claims should not be arbitrated.

▮ Marketex attempts to distinguish violations of the antitrust laws from those arising from the Federal Trade Commission (FTC) Act, 15 U.S.C. § 45 (Supp. 1980), arguing that claims based on the latter statute are proper for arbitration. *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722 (8th Cir. 1976). Plaintiffs' claim is based on RCW 19.86.020, which renders illegal "unfair or deceptive acts or practices in the conduct of any trade or commerce". RCW 19.86.020. This section was taken almost verbatim from the FTC Act. The purpose and policy behind the FTC Act is closely linked to that underlying the antitrust laws. The

United States Supreme Court has pointed out the similarity:

> Section 5 of the Trade Commission Act [15 U.S.C. § 45] is supplementary to the Sherman Anti–Trust Act and the Clayton Act. . . .
> . . . All three statutes seek to protect the public from abuses arising in the course of competitive interstate and foreign trade.

*Federal Trade Comm'n v. Raladam Co.*, 283 U.S. 643, 647, 75 L. Ed. 1324, 51 S. Ct. 587, 79 A.L.R. 1191 (1931). The same reasons for which antitrust claims have been held to be nonarbitrable hold true for claims based on section 5 of the FTC Act because the FTC Act is part of the federal government's scheme of antitrust laws.

▉ Plaintiffs further argue that the Agreements are controlled independently by RCW 19.86 and that rights arising under the statute must be enforced judicially. They rely on *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir.), *cert. denied*, 444 U.S. 827, 62 L. Ed. 2d 34, 100 S. Ct. 51 (1979), which held that claims under the Fair Labor Standards Act (FLSA) were not arbitrable

> because the arbitration provisions of both contracts are limited to disputes arising from the contracts themselves, and the FLSA claims are statutory rights existing independently of the contracts.

*Leyva*, at 862. As Marketex points out, the *Leyva* court's holding may have been based in part on terms in the contracts that suggested that FLSA claims were not covered by arbitration. But that case is not the first to distinguish between claims arising from contractual as opposed to statutory rights. *Iowa Beef Packers, Inc. v. Thompson*, 405 U.S. 228, 31 L. Ed. 2d 165, 92 S. Ct. 859 (1972) (statutory FLSA claim not subject to arbitration); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974) (trial of Title VII discrimination claim not barred by prior arbitration of same claim). The distinction has received recent attention from other federal courts:

> Arbitration proceedings are chosen by the parties to

vindicate private contractual interests by the application of an arbitrator's specialized competence in the law of the shop. This expertise does not extend to the law of the land, for statutory and constitutional issues must be resolved by the courts.

*Horne v. New England Patriots Football Club, Inc.,* 489 F. Supp. 465, 470 (D. Mass. 1980); *accord, Air Line Pilots Ass'n Int'l v. Northwest Airlines Int'l,* 627 F.2d 272 (D.C. Cir. 1980) (alleged ERISA violation was independent statutory claim, not arbitrable under Railway Labor Act).

In the present case, the parties are protected by rights arising from the "Independent Sales Agreements", and also by rights derived from statute. Independent vindication of plaintiffs' Consumer Protection Act rights in the courts will best "protect the public" from "unfair, deceptive, and fraudulent acts or practices". RCW 19.86.920. Marketex insists that this case is indistinguishable from *Pinkis v. Network Cinema Corp.,* 9 Wn. App. 337, 512 P.2d 751 (1973), and *Allison v. Medicab Int'l, Inc.,* 92 Wn.2d 199, 597 P.2d 380 (1979), both of which found statutory claims based on the Franchise Investment Protection Act, RCW 19.100, arbitrable under broad arbitration clauses in franchise agreements. Both cases relied heavily on the supremacy of the Federal Arbitration Act in the area of interstate contracts, and neither discussed the public interest factors upon which the antitrust exception to the arbitration act is based. Although *Pinkis* and *Allison* may have been correct in the context of the Franchise Investment Protection Act, the same result does not necessarily apply to the Consumer Protection Act. The *Allison* holding itself was questioned in a concurring opinion:

> I do point out that the holding effectively deprives a Washington resident of the protection and remedies provided by our Franchise Investment Protection Act, RCW 19.100. An easy route to escape RCW 19.100 has been provided.

*Allison,* at 204 (Brachtenbach, J., concurring).

Considering the purpose of the Consumer Protection Act,

its close similarity to the federal antitrust laws, and the clear exception to the operation of the arbitration act covering antitrust laws, we conclude that the policy of the arbitration act favoring arbitration should give way to the stronger policy behind the Consumer Protection Act. This court should not provide an easy escape route from the Consumer Protection Act. We hold that claims under RCW 19.86 are not "referable to arbitration" and therefore are not subject to the section 3 stay provisions of the arbitration act. 9 U.S.C. § 3 (1970). Accordingly, the order which stayed proceedings as to Long's Consumer Protection Act claim is vacated. The order in the Wineland action which denied Marketex' motion to dismiss or stay Wineland's Consumer Protection Act claim is affirmed.

WILLIAMS and CORBETT, JJ., concur.